Reversed and Remanded and Memorandum Opinion filed March 30, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00008-CV

___________________

 

Parrot-Ice Drink Products of America, Ltd.,
Appellant

 

V.

 

K & G Stores, inc., Baljit Nanda, and
Preet Puri, Appellees



 



 

On
Appeal from the 11th Judicial District Court

Harris County,
Texas



Trial Court Cause No. 2007-66349

 



 

 

MEMORANDUM OPINION

Appellant Parrot-Ice Drink Products
of America Ltd. challenges the trial court’s order granting the special
appearances of appellees K & G Stores, Inc., Baljit Nanda, and Preet Puri.
 See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon 2008).  We
reverse and remand.   

Background

Parrot-Ice is a Texas company that sells and leases
specialty drink dispensers in the frozen beverage market.  Its principal office
is located in Houston, Texas.  Parrot-Ice contracted in 1999 to lease frozen
drink dispensers to K & G.  K & G is a Colorado corporation that owns
11 convenience stores in Colorado.  Nanda and Puri signed the lease agreement
individually as guarantors of the lease obligations undertaken by K & G.  

K & G obtained financing for the lease agreement
from First Sierra Financial.  The lease agreement lists a Houston, Texas office
address for First Sierra Financial.  American Express Business Finance bought
First Sierra Financial in 2001.   American Express Business Finance later sold
First Sierra Financial to KeyCorp.  KeyCorp owned First Sierra Financial at the
time this suit was filed.  American Express Business Finance and KeyCorp
maintained Texas offices during their respective periods of ownership of First
Sierra Financial.    

The lease agreement is a single document containing
two consent-to-jurisdiction clauses: (1) the consent-to-jurisdiction clause in
the guaranty part of the document (the “Guaranty Clause”), which applies to
Nanda and Puri as individual guarantors of K & G’s obligations under the
lease; and (2) the consent-to-jurisdiction clause in the lease part of the
document (the “Lease Clause”), which applies to lessee K & G.[1]  The Guaranty
Clause states, “Guarantor consents to the jurisdiction of any state or federal
court located in California or in any other state where Lessor has an office.” 
The Lease Clause states, “Without limiting the Lessor to bring any action or
proceeding against Lessee in the courts of other jurisdictions, Lessee
irrevocably submits to the jurisdiction of any State or Federal court located
in California or in an[y] state where Lessor has an office.”

Under the lease agreement, Parrot-Ice is the
“supplier,” K & G is the “lessee,” First Sierra Financial is the “lessor,”
and Nanda and Puri are “guarantors.”  The lease agreement also contains a
choice of law clause selecting California law.  

The lease agreement had an initial term of four
years.  After the initial term expired, the lease agreement automatically
renewed in 90-day intervals until written notice of termination was given.  At
the end of the lease agreement’s initial four-year term in 2003, Parrot-Ice
became the “lessor” under the lease agreement pursuant to a separate contract
between Parrot-Ice and First Sierra Financial.  

Parrot-Ice sued K & G and Nanda on October 25, 2007,
alleging that they breached the lease agreement.  K & G and Nanda filed
special appearances on December 20, 2007.  Parrot-Ice filed an amended original
petition on July 22, 2008 adding Puri as a defendant.  Puri filed a special
appearance on September 3, 2008.  After holding a hearing, the trial court
granted Nanda’s, Puri’s, and K & G’s special appearances in an order signed
on December 1, 2008.  The trial court did not sign findings of fact or
conclusions of law.    

Standard
of Review

Determining whether a trial court has personal
jurisdiction over a defendant presents a question of law subject to de novo
review.  BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex.
2002).[2]

Trial courts sometimes must resolve fact issues
before deciding personal jurisdiction.  Id.  If the trial court does not
sign findings of fact and conclusions of law, all facts necessary to support
the trial court’s ruling and supported by the evidence are implied in favor of
the trial court’s decision.  Id. at 794-95.  When the appellate record
includes the reporter’s record and the clerk’s record, parties may challenge
the legal and factual sufficiency of these implied findings.  Id.  If
the appellate court determines that the trial court’s findings are supported by
sufficient evidence, or if the material facts are undisputed, then the appellate
court decides as a matter of law whether those facts negate all bases for
personal jurisdiction.  Id.

The plaintiff bears the initial burden of pleading
sufficient allegations to bring a nonresident within the provisions of the
Texas long-arm statute.  Id.; Cerbone v. Farb, 225 S.W.3d 764,
766-67 (Tex. App.—Houston [14th Dist.] 2007, no pet.).  The burden then shifts
to the nonresident defendant to negate all bases of personal jurisdiction
asserted by the plaintiff.  Moki Mac River Expeditions v. Drugg, 221
S.W.3d 569, 574 (Tex. 2007); Cerbone, 225 S.W.3d at 767.

The court will not resolve merits-based questions on
appeal regarding a special appearance.  Pulmosan Safety Equip. Corp. v. Lamb,
273 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

Analysis 

            Parrot-Ice asserts that
personal jurisdiction is established with respect to Nanda, Puri, and K & G
because (1) all three defendants consented to jurisdiction in Texas pursuant to
the Guaranty Clause and the Lease Clause; and, alternatively, (2) the minimum
contacts standard is satisfied.  

Parrot-Ice asserts that personal jurisdiction over
Nanda and Puri is established based on the Guaranty Clause, and that personal
jurisdiction over K & G is established based on the Lease Clause.  A
consent-to-jurisdiction clause is one of several ways a litigant may consent to
personal jurisdiction in a forum.  See Burger King Corp. v. Rudzewicz,
471 U.S. 462, 473 n.14 (1985); In re Wilmer Cutler Pickering Hale &
Dorr, LLP, No. 05-08-01395-CV, 2008 WL 5413097, at *4 (Tex. App.—Dallas,
Dec. 31, 2008, orig. proceeding [mand. denied]).  If a litigant signs a
contract containing a consent-to-jurisdiction clause, then that litigant either
has consented to personal jurisdiction or waived the requirements for personal
jurisdiction in the forum or forums within the scope of the clause.  Burger
King Corp, 471 U.S. at 473 n. 14; Tri-State Bldg. Specialties, Inc. v.
NCI Bldg. Sys., L.P., 184 S.W.3d 242, 248 (Tex. App.—Houston [1st Dist .]
2005, no pet.); In re Wilmer Cutler Pickering Hale & Door, LLP, 2008
WL 5413097, at *4.    

Nanda, Puri, and K & G argue that they did not
consent to personal jurisdiction in Texas under the consent-to-jurisdiction
clauses.  They first contend that the clauses should be construed as consenting
to jurisdiction in California and any other state in which the lessor had an office
“on the day that Plaintiff’s Original Petition was filed.”  Nanda, Puri, and K
& G assert that First Sierra Financial did not have an office in Texas on
the day Parrot-Ice filed its original petition; thus, under their construction,
they did not consent to personal jurisdiction in Texas.  Alternatively, Nanda,
Puri, and K & G argue that these clauses are ambiguous because they are
susceptible to multiple reasonable interpretations.  

Parrot-Ice argues that the clauses are written in
present tense; therefore, they should be construed as consenting to personal
jurisdiction in California and any other state in which First Sierra Financial
had an office “at the time the parties reached their agreement.”  The lease
agreement lists a Houston, Texas office for First Sierra Financial.  Thus,
under Parrot-Ice’s construction, Nanda, Puri, and K & G consented to
jurisdiction in Texas when they signed the agreement containing the forum
selection clauses because First Sierra Financial had an office in Texas at that
time. 

A.        The Guaranty Clause 

Nanda and Puri consented to jurisdiction “in any . .
. state where Lessor has an office.”  The lease’s guaranty section defines
“Lessor” as “First Sierra Financial, Inc., its successors and assigns.”  

It is undisputed that First Sierra Financial was
purchased by American Express Business Finance in 2001, and that American
Express Business Finance later sold First Sierra Financial to KeyCorp.  It is
undisputed that Parrot-Ice became the “Lessor” under the lease agreement when
the initial four-year lease term expired in 2003 pursuant to a separate
agreement between Parrot-Ice and First Sierra Financial.  It also is undisputed
that First Sierra Financial, American Express Business Finance, KeyCorp, and
Parrot-Ice all maintained offices in Texas while they were the “Lessor” under
the Guaranty Clause.  Under these circumstances, every possible “Lessor” had an
office in Texas regardless of whether the operative time frame is the time of
signing (as Parrot-Ice contends) or the time of filing suit (as Nanda and Puri
contend).  Therefore, Nanda and Puri consented to personal jurisdiction in
Texas pursuant to the Guaranty Clause under either interpretation.   

B.        The Lease Clause 

K & G agreed that it “irrevocably submits to the
jurisdiction of any State or Federal court located in California or in an[y]
state where Lessor has an office.”  Unlike the Guaranty Clause, the term
“Lessor” as used in the Lease Clause is not defined to include First Sierra
Financial’s successors and assigns.  Therefore, the time-of-signing versus
time-of-filing dispute cannot be resolved as to K & G by looking at office
locations of First Sierra Financial’s successors.  

First Sierra Financial had a Texas office at the time
of signing; on this record, it did not have a Texas office at the time suit was
filed.  The lease agreement lists a Texas office address for First Sierra
Financial.  K & G attached an affidavit from its counsel stating in part as
follows:

I
have done an internet search on First Sierra Financial, Inc., and found a
variety of documents on the internet that indicate the company existed in the
late 1990’s in Houston.  I was unable to find anything indicating the company
still exists or has any office in Texas.  I looked in the Houston phone book but
was unable to find any listing for First Sierra Financial, Inc.   

 

There also is evidence in the
record that American Express Business Finance bought First Sierra Financial in
2001, and that American Express Business Finance later sold First Sierra
Financial to KeyCorp.   

We analyze the Lease Clause under the general rules
for contract interpretation.   See Wilmer Cutler Pickering Hale & Dorr,
2008 WL 5413097, at *4.  We construe a contract according to its plain
language.  See CNOOC Se. Asia Ltd v. Paladin Res. (Sunda) Ltd, 222
S.W.3d 889, 895 (Tex. App.—Dallas 2007, pet. denied).  Whether a contract is
ambiguous is a question of law.  J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003).  We determine whether a contract is ambiguous by analyzing
the contract as a whole, in light of the circumstances present when the parties
entered into the contract.  Universal Health Servs., Inc. v. Renaissance
Women’s Group, P.A., 121 S.W.3d 742, 746 (Tex. 2003).  A contract is
ambiguous when it is susceptible to more than one reasonable interpretation.  Frost
Nat’l Bank v. L & F Distribs., Ltd., 165 S.W.3d 310, 312 (Tex. 2005).  If
a contract is worded so that it can be given a certain or
definite legal meaning, it is unambiguous.  Id.  The parties’ mere
disagreement about a contract’s meaning does not render it ambiguous.  Hewlett-Packard Co. v.
Benchmark Elecs., Inc., 142 S.W.3d 554, 561 (Tex. App.—Houston [14th Dist.]
2004, pet. denied).  The court may conclude that a contract is ambiguous in the
absence of such pleading by any party.  Sage St. Assocs. v.
Northdale Constr. Co., 863 S.W.2d 438, 445 (Tex. 1993).  

We conclude that the lease forum selection clause is
not ambiguous because it can be given a definite legal meaning.  The clause
states that “Lessee . . . submits to the jurisdiction
. . . in California or in an[y] state where Lessor has
an office.” (emphasis added).  The clause is written in present tense,
establishing that the relevant time period is the point in time at which the
contract was signed.  Further, the clause references “where Lessor
has an office;” it does not reference successors and assigns.  (emphasis added). 
Therefore, the only reasonable interpretation is that the lessee “submits” to
jurisdiction “in California and in an[y] state where Lessor has an office” at
the time of signing the contract.  See Chambers County v. TSP Dev., Ltd.,
63 S.W.3d 835, 839 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (Phrase
“Seller sells and agrees to convey” is present tense “suggesting the document
itself brings about the sale,” whereas phrase “Seller agrees to sell and Buyer
agrees to buy” is prospective “suggesting that the actual sale may take place
in the future but is not being effectuated by the present contract itself.”).  


K & G argues that the clause reasonably can be
interpreted to mean that it submitted to jurisdiction “in California or in
an[y] state where Lessor has an office” at the time suit is filed.  K & G’s
interpretation is not supported by the plain language of the clause. 
K & G’s interpretation is unreasonable because it requires
reading language into the clause indicating that the “lessor” must have an
office “at the time suit is filed.”  There is no such language in the Lease
Clause or in the lease agreement.[3] 
We conclude that the only reasonable interpretation of the Lease Clause is that
the time of signing is the operative timeframe.  See CMS Partners, Ltd. v.
Plumrose USA, Inc., 101 S.W.3d 730, 733 (Tex. App.—Texarkana 2003, no pet.)
(unambiguous meaning of clause was that “county and state of the defendant”
were determined according to parties’ status at time the contract was signed). 


Having determined that the Lease Clause is
unambiguous, we must next determine whether K & G consented to jurisdiction
in Texas under the clause.  The lease agreement designates First Sierra
Financial as the “Lessor,” and lists a Texas address for First Sierra
Financial.  Therefore, K & G consented to jurisdiction in Texas under the
Lease Clause.

C.        Enforceability of the Consent-to-Jurisdiction
Clauses

Nanda, Puri, and K & G did not argue in
the trial court that the consent-to-jurisdiction clauses are unenforceable or
present evidence in support of such an argument.  In their second appellate
brief, Nanda, Puri, and K & G assert that the consent-to-jurisdiction
clauses cannot be enforced.[4] 
However, they cite no cases in support of this proposition.  The only argument
they make in support of this assertion is that interpreting the Lease Clause to
apply as of the time suit is filed, which they contend is the correct
construction, would lead to absurd results and be unfair.  They make no
argument that the Lease Clause is unenforceable under the construction adopted
by this court above.  

            We need not address which legal standard should
be applied to determine the enforceability of consent-to-jurisdiction clauses,
as opposed to mandatory forum selection clauses.  At a minimum, the standard
would be as favorable to enforceability as the standard for mandatory forum
selection clauses.  See In re Int’l Profit Assocs., Inc., 274 S.W.3d
672, 675 (Tex. 2009) (mandatory forum selection clauses are presumptively
enforceable and must be enforced by the trial court unless the party opposing
enforcement clearly shows that (1) the clause is invalid for reasons of fraud
or overreaching, (2) enforcement would be unreasonable or unjust, (3)
enforcement would contravene a strong public policy of the forum where the suit
was brought, or (4) the selected forum would be seriously inconvenient for
trial).  Nanda, Puri, and K & G made no showing to rebut the presumption of
enforceability under this standard, and therefore, the trial court could not
have granted the special appearance based on a determination that the Guaranty
Clause and the Lease Clause were unenforceable.  

Conclusion

            The
trial court erred in granting Nanda’s, Puri’s, and K & G’s special
appearances. We reverse the trial court’s December 1, 2008 order granting the
special appearances of Nanda, Puri, and K & G and remand this case for
further proceedings in accordance with this opinion.

                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

Panel consists of Justices
Frost, Boyce, and Sullivan.

 

 









[1] The parties refer to
these clauses as “forum selection clauses.”  They are more accurately described
as “consent-to-jurisdiction” clauses.  In contrast to a forum selection clause,
in which the parties agree to litigate in a particular forum, a “consent-to-jurisdiction”
clause indicates that the parties consent or submit to the jurisdiction of a
particular forum.  In re Wilmer Cutler Pickering Hale & Dorr, LLP,
No. 05-08-01395-CV, 2008 WL 5413097, at *4 (Tex. App.—Dallas, Dec. 31, 2008,
orig. proceeding [mand.denied]).   A “consent-to-jurisdiction” clause is
permissive rather than mandatory.  Id.    





[2] In their brief, Nanda,
Puri, and K & G address whether the choice of law clause selecting
California law is reasonable; they suggest that, if the choice of California
law is enforceable, then this court must follow California precedent in
determining whether the exercise of personal jurisdiction satisfies the
requirements of federal due process.  Presuming without deciding that this
argument otherwise would be correct, it fails because no party has asserted or
established that California precedent differs from Texas precedent regarding
any issue in this case. Therefore, this court presumes that California
precedent is the same as Texas precedent. See Excess Underwriters at
Lloyd’s, London v. Frank’s Casing Crew & Rental Tools, Inc., 246 S.W.3d
42, 53 (Tex. 2008). 





[3] The authorities K & G
relies on to support its time-of-filing argument are distinguishable. 
K & G first cites Mollan v. Torrance, 22 U.S. 537, 539
(1824), and Conolly v. Taylor, 27 U.S. 556, 565 (1829).  These cases
address subject matter jurisdiction rather than personal jurisdiction.  See Mollan,
22 U.S. at 539; Conolly, 27 U.S. at 565.  Specifically, they address the
point in time at which a court determines citizenship for purposes of diversity
jurisdiction in federal court.  See Mollan, 22 U.S. at 539; Conolly,
27 U.S. at 565.  The other cases K & G cites also address subject matter
jurisdiction rather than personal jurisdiction.  See Ex parte Birmingham,
244 S.W.2d 977, 980 (Tex. 1952); Brannon v. Pac. Employers Ins. Co., 224
S.W.2d 466, 469 (Tex. 1949); Isbell v. Kenyon-Warner Dredging Co., 113
Tex. 528, 261 S.W. 762, 763 (1924); Long v. Fox, 625 S.W.2d 376, 378
(Tex. Civ. App.—San Antonio 1981, writ ref’d n.r.e.).  The cases cited by K
& G do not address the construction of a consent-to-jurisdiction clause.      






[4] In their first appellate brief, they did not assert
that these clauses are unenforceable; however, they assert that the trial court
may have declined to enforce these clauses under the legal standard stated in Greenwood
v. Tillamook Country Smoker, Inc., 857 S.W.2d 654, 657 (Tex. App.—Houston
[1st Dist.] 1993, no writ).  This argument lacks merit because this legal
standard has been abrogated by the Texas Supreme Court.  See In re
AIU Ins. Co., 148 S.W.3d 109, 111–13 (Tex. 2004) (adopting legal standard
from M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9 (1972), for
determining enforceability of mandatory forum selection clauses); Phoenix
Network Techs. (Europe) Ltd. v. Neon Sys., Inc., 177 S.W.3d 605, 611–14
& ns. 4, 5, 7 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (concluding
that Greenwood case is no longer good law as to legal standard for
mandatory forum selection clauses).